United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA F.,<br><br>               Plaintiff,<br><br>      v.<br><br>SSA COMMISSIONER,<br><br>               Defendant. | Case No.  24-cv-09072-EKL<br><br>**ORDER REVERSING AND REMANDING**<br><br>Re: Dkt. No. 11 |

Plaintiff Georgia F.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423 *et seq.*  The Court carefully reviewed the parties' briefs and the complete administrative record.  Administrative Record, ECF No. 8 ("AR").  For the reasons set forth below, this case is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

I.      **BACKGROUND**

      A.      **Factual Background**

In July 2022, Plaintiff filed an application for Title II disability insurance benefits.  AR 197.  Plaintiff's application was denied both initially and on reconsideration.  AR 93, 101.  The Administrative Law Judge ("ALJ") held a hearing and subsequently issued an unfavorable decision on June 5, 2024.  AR 14, 31.  Plaintiff requested review of the unfavorable decision by the Appeals Council, which was also denied.  AR 1-3.  Plaintiff now seeks judicial review of the

---

[1] Because this Order contains potentially sensitive medical information, Plaintiff's name is partially redacted.  The Order does not alter the degree of public access to other filings in this action provided by Federal Rule of Civil Procedure 5.2(c) and Civil Local Rule 5-1(c)(5)(B)(i).

decision denying her application for benefits.

Plaintiff was 64 years old as of her alleged disability onset date.[2]  She alleges she is disabled due to the following impairments:  cervical and lumbar radiculopathy, carpal tunnel syndrome, trigger finger of the fourth digit, asthma, COPD, sleep apnea, GERD, coronary artery disease, hypertension, irritable bowel syndrome, diabetes mellitus, dysfunction of the left pupil, and major depressive disorder (recurring).  AR 20, 221.  Plaintiff completed college in the Philippines, AR 222, and has a long work history in the health care industry in the United States, AR 223.  Plaintiff worked as a nurse from 1991 to 2006, and then as the director of patient care services for a hospital from 2006 to her alleged disability onset date.  AR 223.

**B.      Summary of ALJ Findings**

In the unfavorable decision, the ALJ determined that Plaintiff met the insured status requirements of the Act through the date of the decision.  AR 18.  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  AR 20.  At step two,[4] the ALJ concluded that Plaintiff has the following severe impairments:  "right carpal tunnel syndrome, trigger finger of the 4th digit, [and] lumbar and cervical spine disorder."  AR 20.  The ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.  AR 20.  The ALJ determined that Plaintiff's remaining impairments are not severe.  AR 20-21.  At step three,[5] the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's

United States District Court
Northern District of California

---

[2] Plaintiff alleges a disability onset date of November 1, 2021.  AR 17, 63.

[3] In determining whether an individual is disabled under the Act, the ALJ is required to follow a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability.  *Id.* § 404.1520(a)(4)(i).

[4] At step two, the ALJ must determine if the claimant has an impairment or combination of impairments that are "severe," meaning that the impairment or impairments "significantly limit[] the claimant's 'physical or mental ability to do basic work activities.'"  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (quoting 20 C.F.R. § 404.1522(a)).

[5] At step three, the ALJ determines whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" set forth at 20 C.F.R. pt. 404, subpt. P, app. 1.

United States District Court
Northern District of California

regulations.  AR 21.  At step four,[6] the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of medium work, without any non-exertional or environmental limitations.  AR 21-24.  The ALJ determined that Plaintiff has past relevant work "as a composite job consisting of a registered nurse/general duty nurse (DOT 075.364-010) a medium exertion level skilled job with an SVP-7 and a director of patient care/health care facility administrator (DOT 187-117-010) a light (performed at light, and medium, and heavy) exertion level skilled job with an SVP-8."  AR 24.  Based on vocational expert testimony, the ALJ determined that Plaintiff cannot perform her past relevant work as it was actually performed.  AR 24.  At step five,[7] the ALJ found that jobs exist in the national economy that Plaintiff can perform, including packager, cleaner, and food service worker.  AR 25.  Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Act, from the alleged onset date through the date of the decision.  AR 25.  Plaintiff timely appealed the ALJ's unfavorable decision, and the case was reassigned to this Court.

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Court can affirm, modify, or reverse the agency's decision, with or without remanding the case for a rehearing.  *See* 42 U.S.C. § 405(g).  The ALJ's decision may be reversed only if it is not supported by substantial evidence or if the ALJ committed a legal error. *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) (citation omitted).  Substantial evidence means "more than a mere scintilla but may be less than a preponderance."  *Id.*  (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

[6] At step four, the ALJ assesses the claimant's residual functional capacity, which is the most a claimant can do despite their limitations.  The ALJ must determine whether the claimant has the capacity to do their past relevant work.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

[7] At step five, the ALJ must determine whether the claimant can perform "other work" that exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). In making this determination, the ALJ may rely on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, or on the testimony of a vocational expert, utilizing the same RFC and limitations set forth in step four.

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

When determining whether substantial evidence exists to support the Commissioner's decision, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation modified). If the evidence supports more than one rational interpretation, the court must defer to the Commissioner's decision. *Ahearn*, 988 F.3d at 1115-16 (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation modified).

## III.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.[8] Pl.'s Br. at 5-7, ECF No. 11. The Court agrees.

### A.    RFC Determination

"The RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citation modified). Here, the ALJ found that Plaintiff, who was 64 years old as of her alleged onset date and was diagnosed with degenerative disease of the lumbar spine, carpal tunnel syndrome, and asthma/COPD, can perform "the full range of medium work," without any non-exertional or environmental limitations. AR 21.

The ALJ erred in at least three regards when formulating Plaintiff's RFC. First, the ALJ erred in evaluating the objective medical evidence. Second, the ALJ erred in rejecting Plaintiff's subjective symptom testimony. Third, the ALJ erred by failing to consider all of Plaintiff's

---

[8] Plaintiff also argues that the ALJ erred at step two in finding that Plaintiff's mental health conditions are not severe impairments. The Court does not reach this issue because other errors are dispositive.

United States District Court
Northern District of California

impairments. As a result of these errors, the ALJ's RFC determination is not supported by substantial evidence.

### 1.    Evaluation of the Objective Medical Evidence

The ALJ's determination that the objective medical evidence is consistent with medium work is not supported by substantial evidence. As an initial matter, Plaintiff's objective medical records indicating numbness in her arms and hands and pain with walking and range of motion exercises do not appear to be consistent with the requirements of medium work. Medium work requires standing or walking "for a total of approximately 6 hours in an 8-hour work day," frequently "lifting or carrying objects weighing up to 25 pounds," use of arms and hands "to grasp, hold, and turn objects," and frequent bending or stooping. SSR 83-10. "In most medium jobs, being on one's feet for most of the workday is critical." *Id.*

The objective medical evidence establishes that Plaintiff has a history of pain that impacts her ability to stand, balance, and walk. Most notably, Plaintiff has been diagnosed with degenerative disease of the lumbar spine, lumbar radiculopathy, and degenerative changes of the pubic symphysis. Records reflect that these conditions have been present and worsening since at least 2020. *See, e.g.*, AR 503 (10/14/20 – "chronic" and "worsening" low back pain with bilateral radicular symptoms), 574-75 (9/17/21 – CT finding "[m]ultilevel degenerative changes of the spine"), 784 (7/28/22 – "history of lumbar radiculopathy [and] degenerative joint disease"), 849 (5/12/23 – Patient "presents with chronic low back pain," "signs and symptoms consistent with lumbar radiculopathy," "decreased lumbar range," "decreased sensation on the left lower extremity," and "pain with PIVMS to L1/2-L4/5," requiring "skilled PT intervention to address her current impairments"), 1476 (1/20/23 – x-ray finding degenerative disease of the lumbar spine and pubic symphysis), 1523-24 (7/30/21 – CT finding degenerative disc disease with spondylolisthesis at L4/5). Providers have noted abnormal gait, decreased balance, coordination, and range of motion, as well as pain with all range of motion testing and walking. *See, e.g.*, AR 501, 503, 846, 1239. The record further reflects that these conditions cause "an impaired functional ability to walk and sleep." AR 503. Consequently, Plaintiff has engaged in physical therapy, has taken tramadol, an opioid agonist, for severe pain since at least July 2021, and is

United States District Court
Northern District of California

prescribed 650 mg of Tylenol every six hours. *See, e.g.*, AR 721, 784, 813, 843.

In addition, Plaintiff has a history of shoulder pain and chronic, severe abdominal pain that further erodes her functional capacity to stand, walk, and lift or carry objects up to 25 pounds. As for her shoulder pain, Plaintiff has undergone two shoulder surgeries and testified that she has declined additional surgeries because the two prior surgeries did not help. *See* AR 22. As for her abdominal pain, Plaintiff has repeatedly sought treatment, undergone various forms of imaging, and has been prescribed pain medication beginning a few months before her alleged onset date and continuing through the date of medical records available in the administrative record. *See, e.g.*, AR 841 (2023), 889-90 (2022), 942 (2021), 948 (2021), 979 (2021). Finally, Plaintiff has been diagnosed with carpal tunnel syndrome and trigger finger, resulting in pain and numbness in her arm, wrist, and fingers. AR 1209 (noting fourth finger locks in place), 1210 (noting decreased tissue mobility and grip strength).

Given the objective medical records, the ALJ's RFC findings are unsupported. Rather, it appears that the ALJ acted as his own medical expert by independently assessing clinical findings. *Black v. Bisignano*, No. 24-CV-01303, 2025 WL 1683872, at *4 (E.D. Cal. June 16, 2025) (collecting cases) ("Ninth Circuit courts have found that 'barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decision[].'"). For example, the ALJ concluded that reducing Plaintiff to medium work addresses limitations – including "manipulative limitations" – relating to her carpal tunnel syndrome and trigger finger because the condition is "mild." AR 24. The ALJ made this determination without any medical opinion of record to that effect, and despite the record reflecting reduced grip strength, pain, and numbness. AR 1209-10. In doing so, the ALJ erred. *Black*, 2025 WL 1683872, at *4 (collecting cases) ("[A]n ALJ is not permitted to render their own medical opinions or independently assess clinical findings.").

Because the ALJ assessed Plaintiff's RFC without any medical opinions and did so in a manner that appears facially inconsistent with the objective medical evidence, the ALJ's RFC determination is not supported by substantial evidence.

United States District Court
Northern District of California

### 2.    Evaluation of Plaintiff's Subjective Symptom Testimony

Plaintiff's subjective symptom testimony is incompatible with medium work, and the ALJ did not provide "clear and convincing" reasons for rejecting her testimony. At the hearing, Plaintiff testified that she can only stand or walk for 5-10 minutes before needing to sit and rest, that she cannot carry more than 10 pounds, and that she experiences shortness of breath when performing household chores such as washing the dishes. AR 42-44. She further testified that she had an accommodation at her previous job that restricted her to lifting or carrying no more than 10 pounds at a time. AR 44. The ALJ concluded that this testimony is not supported by Plaintiff's "conservative" course of treatment.[9] AR 23. The Court disagrees on two bases.

*First*, Plaintiff's course of treatment has not been conservative. Plaintiff has undergone two shoulder surgeries, has been referred to pain management and acupuncture, and has been prescribed opioid pain medication as well as 650 mg Tylenol every six hours. *See, e.g.*, AR 721, 813, 1223. This does not indicate conservative treatment. *See, e.g.*, *Contreras v. Colvin*, No. 13-CV-01237, 2015 WL 859626, at *11 (E.D. Cal. Feb. 27, 2015) ("[S]urgery is not considered conservative treatment." (citing *Ritchotte v. Astrue*, 281 F. App'x 757, 759 (9th Cir. 2008))); *Rose P. v. Comm'r of SSA*, 414 F. Supp. 3d 1339, 1344 (W.D. Wash. 2019) (holding that claimant's course of treatment was not a clear and convincing reason to discredit her testimony when she received opioid pain medication and trigger point injections). In addition, the ALJ has not pointed to any non-conservative treatment options that would address Plaintiff's multifaceted conditions and complex symptomatology. Plaintiff "cannot be discredited for failing to pursue non-conservative treatment options where none exist."[10] *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662,

---

[9] The ALJ also discredited Plaintiff's testimony regarding "shortness of breath" as unsupported by the medical record. This was error because the medical record reflects symptoms of shortness of breath supporting Plaintiff's testimony. *See, e.g.*, AR 363-64 (cardiac stress test terminated due to shortness of breath and chest pain), 470 (positive for shortness of breath), 614 (albuterol nebulizer prescribed every 4 hours as needed for shortness of breath), 728 (same).

[10] In support of his conclusion that Plaintiff's "conservative" treatment is inconsistent with her symptom testimony, the ALJ states that Plaintiff had "no significant treatment until May 2023." AR 23. However, this statement ignores her prior treatment, and that Plaintiff began taking opioid medication for pain in July 2021. AR 1174. The ALJ does not explain how this is not "significant treatment." *See, e.g.*, *Bucknell v. Berryhill*, No. ED CV 18-0261, 2018 WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) (collecting cases) ("The consistent use of . . . a strong opioid medication . . .

United States District Court
Northern District of California

664 (9th Cir. 2010) (rejecting an adverse credibility determination where "the record [did] not reflect that more aggressive treatment options are appropriate or available").

In support of his conclusion that Plaintiff's "conservative" treatment is inconsistent with her symptom testimony, the ALJ states that Plaintiff "did not complete physical therapy." AR 22-23. However, the ALJ does not engage with Plaintiff's explanations for not completing physical therapy on two occasions. Although "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can cast doubt on a claimant's sincerity, *Spindel v. Comm'r Soc. Sec. Admin.*, 333 F. App'x 174, 176 (9th Cir. 2009), here, the ALJ does not address the reasons Plaintiff offered for not completing physical therapy. In July 2022, Plaintiff declined to restart physical therapy, but Plaintiff explained to her provider that she preferred to do exercises that she learned in prior rounds of physical therapy on her own. *See* AR 884. After eventually restarting physical therapy, Plaintiff stopped physical therapy after one of her appointments in September 2023, because she was leaving to visit the Philippines for several months, to attempt to sell her parent's house. *See* AR 1199, 1210. Moreover, because medical records are only available through November 2023, it is unclear whether Plaintiff completed additional physical therapy upon return home. Thus, the ALJ's conclusion that Plaintiff's symptom testimony is inconsistent with her "conservative" treatment is not supported by substantial evidence.

*Second*, regardless of how the ALJ characterizes Plaintiff's course of treatment, "the critical question . . . is whether substantial evidence supports the ALJ's inference that" Plaintiff's symptoms are not as severe as she alleges because she failed to undergo more aggressive treatment. *Brown v. Colvin*, No. ED CV 14-101-E, 2014 WL 5330722, at *3 (C.D. Cal. Oct. 20, 2014). Here, the objective evidence detailed above appears entirely consistent with Plaintiff's testimony, and the ALJ offered no explanation for how Plaintiff's course of treatment is inconsistent with her testimony that she cannot walk for more than 5-10 minutes before needing to

cannot accurately be described as 'conservative' treatment'"); *Tina S. v. Comm'r of Soc. Sec.*, No. 23-CV-480, 2024 WL 1132414, at *3 (W.D. Wash. Mar. 15, 2024) (collecting cases) ("[M]any courts have found opioid treatment would not be considered conservative.")

rest and that she cannot carry more than 10 pounds. *Cf. Streeter v. Saul*, 835 F. App'x 305, 306 (9th Cir. 2021) (explaining that "[s]ubstantial evidence supported the ALJ's findings" where plaintiff's testimony "was inconsistent with [her] conservative course of treatment[.]"). Even if the objective evidence did not support these allegations – though it does – a claimant's subjective testimony "cannot be rejected solely because the objective medical evidence does not support the severity of [plaintiff's] impairment." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

\* \* \*

In sum, the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### 3.    Consideration of Plaintiff's Non-Severe Impairments

In formulating the RFC, an ALJ must consider all medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"); *see also Weiskopf v. Berryhill*, 693 F. App'x 539, 541-42 (9th Cir. 2017) (citation omitted). Here, the ALJ did not meaningfully assess the extent to which Plaintiff's "non-severe" impairments would impact her RFC. For example, the record reflects that Plaintiff has a variety of additional conditions that may not amount to severe impairments individually, but must nevertheless be considered as part of Plaintiff's RFC. These include but are not limited to Plaintiff's asthma/COPD, depression, anxiety, visual impairments, and balance issues. As to Plaintiff's asthma and COPD, the ALJ did not provide for any environmental restrictions, such as avoiding fumes, dust, and poor ventilation. *See* SSR 85-15; *see also* AR 363-64, 614, 728 (medical records supporting shortness of breath). The ALJ likewise provided for no limitations in climbing, balancing, stooping, kneeling, crouching, reaching, or handling, each of which potentially erode the availability of jobs in the national economy. SSR 85-15 (explaining that an inability to stoop from one-third to two-thirds of the time would substantially effect the availability of medium work).

\* \* \*

In sum, the ALJ's RFC determination is not supported by substantial evidence and is

inconsistent with the objective medical evidence and Plaintiff's credible symptom testimony. Accordingly, remand is required.

### B.    Remand for Further Proceedings

On remand, the ALJ must reassess Plaintiff's RFC consistent with this Order.  Specifically, the ALJ must account for Plaintiff's severe *and* non-severe impairments in formulating her RFC. Those impairments include:  cervical and lumbar radiculopathy, carpal tunnel syndrome, trigger finger of the fourth digit, chronic and recurring abdominal pain, asthma, COPD, sleep apnea, GERD, coronary artery disease, hypertension, irritable bowel syndrome, diabetes mellitus, dysfunction of the left pupil, and major depressive disorder (recurring).  AR 20.  The ALJ must also consider all relevant exertional, non-exertional, and environmental limitations.  For example, the ALJ must consider the extent to which Plaintiff's combined impairments and pain impact her ability to stand or walk during an eight-hour workday, lift or carry objects, climb, balance, stoop, kneel, and crouch.

To the extent Plaintiff's subjective testimony regarding her limitations is consistent with the medical evidence in the record, when evaluating her RFC, the ALJ must incorporate those limitations, including an inability to stand or walk for more than 5-10 minutes or carry more than 10 pounds.  The ALJ must further consider the extent to which Plaintiff's shoulder impairment, cervical and lumbar radiculopathy, carpal tunnel, and trigger finger impact Plaintiff's ability to reach, handle, finger, and feel.  *See* SSR 85-15 (explaining that reaching and handling are "activities required in almost all jobs").  In addition, the ALJ must consider the extent to which Plaintiff's blurred vision impairs her ability to perform work at all exertional levels.  *See, e.g.*, AR 1034, 1202, 1207.  Finally, the ALJ must consider the extent to which Plaintiff's mental health conditions impair her ability to maintain full-time employment at any exertion level.  To determine whether there are clear and convincing reasons to not fully credit Plaintiff's subjective testimony, the ALJ may need to further develop the record before formulating her RFC.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when the record is inadequate to allow for proper evaluation of the evidence.").

10

## IV.    DISPOSITION

For the foregoing reasons, the case is REMANDED to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated:  March 17, 2026

_____
Eumi K. Lee
United States District Judge